IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

BRUCE DARNELL DOTSON II, #1432390   §

VS.                                      §               CIVIL ACTION NO. 4:09cv417

DIRECTOR, TDCJ-CID            §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Bruce Darnell Dotson, II, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred for findings of fact, conclusions of law and recommendations for the disposition of the lawsuit.

### Background

Petitioner is complaining about his Grayson County conviction for aggravated robbery. Cause Number 054649-15. A jury found him guilty and sentenced him to twenty-one years' confinement on March 7, 2007. The Fifth Court of Appeals affirmed his conviction on April 15, 2008. *Dotson v. State*, No. 05-07-00509-CR, 2008 WL 1724925 (Tex. App.–Dallas April 15, 2008) Petitioner did not file a Petition for Discretionary Review (PDR). However, he filed an application for state writ of habeas corpus, which the Texas Court of Criminal Appeals (CCA) denied without written order based on the findings of the trial court on November 4, 2008. *Ex parte Dotson*, Application No. 71,310-03.

Petitioner filed the present federal petition alleging he is entitled to relief because (1) his trial counsel was ineffective in numerous instances, (2) his accomplice's confession was coerced, (3) the

State relied on an impermissibly suggestive photographic line-up, (4) his accomplice was coerced into testifying at Petitioner's trial, (5) the trial court refused to provide a copy of the appellate record to him, and (6) the evidence was insufficient to support his conviction. The Attorney General provided a Response, asserting that some of Petitioner's claims are procedurally barred and the remaining claims are without merit. Petitioner did not file a Reply.

<u>Statement of Facts</u>

The Fifth Court of Appeals provided the statement of facts in its opinion:

A jury found Bruce Darnell Dotson II guilty of the aggravated robbery of Verline Sample, a first degree felony, and sentenced him to twenty-one years' confinement. *See* TEX. PENAL CODE ANN. §§ 29.03(a)(3)(A), (b) (Vernon 2003). In a single issue, appellant challenges the admission of certain testimony during the punishment phase of the trial. Concluding appellant's issue is without merit, we affirm the trial court's judgment.

During the punishment phase of trial, Sample, an eighty-year-old man, was asked about his military service. He described his army combat service on Okinawa during World War II. Sample was asked if he received an award for that service. Appellant's counsel said, "Judge, I will object to the relevance of this." The State replied it was admissible victim character evidence. Counsel stated it was "self serving." The court stated, "I will let you ask him a little bit." The State then asked Sample again whether he received any awards from the army, and he said he received "[t]he best from the combat infantry badge." In response to another question, Sample testified he served twenty-one years in the military.

The State next asked Sample about the impact of the robbery on his life. Sample replied, "I really believe that it probably knocked ten years of my life out of the way I had been treated and the injuries that I got." The State referred to "[getting] into this" previously in the trial and asked Sample if he had "got around good before your hip was fractured" and if he used a cane before the incident. Sample replied, "No cane, no nothing. I did garden work, lawn work. I went fishing, hunting and I had a decent life after military service." The State passed Sample, appellant had no questions, and Sample was excused.

. . .

Sample's testimony about his physical capabilities before the incident—not using a cane, doing yard work, hunting—is victim character evidence because it shows his "uniqueness as a human being" and is a "quick glimpse" into his life. *See Salazar,* 90 S.W.3d at 335. Such testimony also clearly relates to the circumstances of the offense, in that it provides context to Sample's testimony as to how the robbery affected his life. Sample's testimony about the length of his military service is also victim character evidence. *See id.* That evidence can be considered to be in the zone of relevancy to the extent it provides the jury a basis for comparing Sample's physical activity before the robbery to that of a non-military retiree. Thus, the trial court did not abuse its discretion in admitting the above testimony.

Evidence that Sample received a military award is also victim character evidence. *See id.* However, ordinarily such evidence does not relate to the "circumstances of the offense" or appellant's personal responsibility and moral culpability, and that is the case here. Thus, we agree that evidence of Sample's military award was not relevant to the jury's decision about the appropriate sentence in this particular case. *See id.; Mosley,* 983 S.W.2d at 261–62. Thus, the trial court abused its discretion in allowing such evidence.

. . .

The evidence concerning Sample's military award took up less than one page of about 100 pages of testimony in the punishment phase. In closing argument, the State made two references to Sample having "served his country." The jury also heard testimony about Sample's injuries and observed his physical condition in the guilt/innocence phase. And the jury heard testimony about appellant's background, including his adjudication for aggravated sexual assault of a child, probation violation, and disciplinary proceedings against him for his bad behavior at boot camp and during a Texas Youth Council commitment. Considering this record, we have a fair assurance that the evidence in question did not influence the jury or had but slight effect. *See id.* Accordingly, we conclude any error in admitting this evidence was harmless.

. . .

Having determined that any error in admitting evidence of Sample's military service at the punishment phase was harmless, we resolve appellant's issue against him. We affirm the trial court's judgment.

*Dotson*, No. 05-07-00509-CR, at 1-3.

3

<u>Federal Habeas Corpus Relief</u>

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed.2d 385 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996. The new provisions of Section 2254(d) provide that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 1517-18, 146 L. Ed.2d 389 (2000); *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Williams*, 529 U.S.

at 405-06, 120 S. Ct. at 1519-20. A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. 1522-23. Rather, that application must be objectively unreasonable. *Id.* 529 U.S. at 409, 120 S. Ct. at 1521. The standard is satisfied only if "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir 1998) (internal quotation marks and citations omitted).

The trial court's factual findings are entitled to a presumption of correctness unless the petitioner can rebut the presumption with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Beel v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed.2d 914 (2002); *see Williams*, 529 U.S. at 404, 120 S. Ct. at 1519. A state application that is denied without written order by the Texas Court of Criminal Appeals, as in the present case, is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other

than the merits). Additionally, federal habeas relief is foreclosed if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed.2d 353 (1993).

## Default and Procedural Bar

The record shows that the state trial court made findings, adopted by the CCA, that Petitioner was barred from raising four of his issues in his state habeas application. He now raises the same four issues in his current federal writ. Specifically, the state habeas court found that claims 2, 3, 4, and 6 raised herein were procedurally defaulted from Texas habeas review. The state court found that these claims could have been raised on direct appeal but were not; thus, they were effectively waived for habeas corpus purposes. Since Petitioner did not file a PDR, the state habeas writ represented his only means of properly presenting these claims before the CCA. Because these claims were not raised in a procedurally correct manner, they have been defaulted and are now procedurally barred from federal habeas review. The CCA adopted the state habeas court's findings. *Dotson*, Appl. No. 71,310-03 at cover.

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default. *Ylst v. Nunnemaker,* 501 U.S. 797, 802-04, 111 S. Ct. 2590, 115 L.Ed.2d 706 (1991). It is well settled under Texas jurisprudence that the writ

of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Goodman,* 816 S.W.2d 383, 385 (Tex. Crim. App.1991). The federal courts recognize Texas's procedural default rule concerning the requirements that record claims must be raised on direct appeal. *Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir.2005). Because petitioner did not raise such claims on direct appeal and the last court to consider such claims expressly and unambiguously based its denial of relief on a state procedural default, his claims are barred absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565. A federal district court must be deferential to state court findings supported by the record. *Pondexter*, 346 F.3d at 149-152. Petitioner has not shown cause or prejudice.

Additionally, as it concerns Petitioner's claim 6 regarding his challenge to the sufficiency of the evidence, insufficient evidence claims must be raised on direct appeal in Texas. *Ex Parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994). When such claims are alleged for the first time in a state application for writ of habeas corpus, and the application is denied, the denial is to be strictly construed as a determination by the CCA that such sufficiency of the evidence claims are not cognizable. *Ex Parte Grigsby*, 137 S.W.2d 673, 674 (Tex. Crim. App. 2004). Because Petitioner failed to show cause and prejudice or a fundamental miscarriage of justice, his failure to raise his sufficiency claim on direct review causes it to now to be procedurally barred from review. *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565

<u>Ineffective Assistance of Counsel at Trial</u>

In a copious amount of issues, Petitioner claims that his trial counsel was ineffective.

<u>Legal Standard</u>

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of

counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. 466 U.S. at 690, 104 S. Ct. at 2066. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Petitioner must "affirmatively prove," not just allege, prejudice. *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.*, 466 U.S. at 697, 104 S. Ct. 2052.

Failure to Adequately Challenge Accomplice's Testimony - Sean Barrett

In several issues, Petitioner complains that trial counsel failed to adequately challenge Sean Barrett's confession and his testimony at trial. Barrett was one of Petitioner's accomplices. Petitioner first argues that counsel should have moved to suppress Barrett's confession. He asserts that Barrett's confession was coerced by threatening him with the death penalty. He states that

Barrett "made his confession not because he was bothered by his conscience but because he was threatened with death and offered a more lenient punishment for cooperating. Petitioner reasoned that, had counsel attempted to suppress the confession based on coercion, Barrett's credibility would be weakened.

In response to the same issue brought in Petitioner's state habeas proceedings, Petitioner's trial counsel, Barry Rubarts, provided an affidavit. In it, he stated:

> There were actually two confessions made by co-defendant Sean Barrett. He made a judicial confession in court, under oath with assistance of counsel having been admonished when he plead guilty to the same offense in open court. He implicated [Petitioner] in his judicial confession. This happened prior to the time of [Petitioner]'s trial. I reviewed a transcript of that hearing. It was not offered into evidence at [Petitioner]'s trial since Barrett was at [Petitioner]'s trial and testified in person. Prior to that, Barrett also confessed to Texas Ranger Bennie during the investigation of the case. I reviewed a videotape of that confession. It was not admitted into evidence during the trial. During the interrogation Barrett first denied participating in the crime and then confessed when Ranger Bennie threatened Barrett with the death penalty and that they would "stick a needle in his arm." I believed that was coercive. Ranger Bennie and Barrett both testified under oath that this happened. Our trial strategy was that this proved Barrett was a liar since he originally denied participation in the crime. Further it showed that his subsequent implication of [Petitioner] during the investigation, during his plea hearing and at [Petitioner]'s trial was tainted by his fear. Being faced with the subsequent judicial confession and live testimony at trial this in my opinion was the best way to discredit Barrett and his implication of [Petitioner] in the crime.

*Dotson*, Appl. No. 71,310-03, at 115.

On cross-examination, counsel questioned Texas Ranger William Bennie. Bennie testified that when he interrogated Barrett, Barrett changed his story several times. Bennie stated that, only after he informed Barrett that the victim of the robbery could die, and that Barrett would then be eligible to receive the death penalty, did Barrett make a more complete confession. Bennie told Barrett that juries tend to be more lenient on defendants who make an early confession. Bennie said

that, at the time of the interrogation, he believed the victim would die. He also testified that he did not believe that Barrett was ever completely truthful, but was attempting to minimize his own culpability. The state habeas court found that counsel reviewed the transcripts of Barrett's confession and strategized that using the information to discredit Barrett's testimony was the best trial strategy. The state court found that Petitioner failed to prove by a preponderance of the evidence that counsel's decision to use the events surrounding Barrett's first confession for cross examination rather than seeking exclusion was an error and not trial strategy or that the result of the case would have been different had counsel sought a motion to suppress. *Dotson*, Appl. No. 71,310-03, at 128.

Furthermore, Barrett's contradictory confession was cumulative, at best. He testified at Petitioner's trial; accordingly, Petitioner cannot show prejudice. Moreover, Petitioner has not shown how he can claim standing to assert Barrett's right against a coercive interrogation and confession. He has failed to show, also, the basis upon which counsel could have had Barrett's confession suppressed. Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2066. He has also failed to show deficient performance or prejudice. *Id.*, 466 U.S. at 694, 104 S. Ct. at 2068. Likewise, he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25.

<u>Failure to Object</u>

Petitioner claims that counsel was ineffective for failing to object to testimony by three witnesses who committed perjury while testifying. Specifically, he asserts that law enforcement officer McClaren lied when he stated that Petitioner admitted that he had lied. Additionally, he argues that his two alleged accomplices lied when they stated that they had intended to go to the mall – not to pick up Barrett.

A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such a basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2066.

Inconsistencies within a witness' testimony, contradictory testimony from various witnesses, and conflicts between reports, written statements and the trial testimony of a prosecution witness do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). To establish a due process violation based on perjured testimony, a petitioner must demonstrate that (1)

the testimony was actually false, (2) the prosecutor was aware of the false testimony, and (3) the false testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). Perjured testimony is material only when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000).

A review of the record shows that the state habeas court found that the law enforcement officer in question - McClaren – did not actually say the things that Petitioner claims he said. "There is no evidence that witness McClaren perjured himself." *Dotson*, Appl. No. 71,310-03, at 121. It also found that the alleged perjured testimony alleged by Petitioner is "based on speculation and hearsay." *Id*. Petitioner fails to meet the elements necessary to establish a violation based on perjured testimony. *Faulder*, 81 F.3d at 519.

Counsel stated that he also virgorously cross-examined the State's witnesses and would have attempted to prove perjured testimony had he had evidence of perjury. However, he had no such evidence. Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. State court findings supported by the record are owed deference by a federal district court. *Pondexter*, 346 F.3d at 149-152. He has also failed to prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068. Petitioner has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103

F.3d at 1224-25.

Next, Petitioner argues that counsel was ineffective for failing to object to the introduction of police reports at trial. However, the state habeas court found that the police reports "were never offered or admitted into evidence. *Dotson*, Appl. No. 71,310-03, at 130. Because no objection was necessary, counsel's performance cannot be deficient for failing to object. *Green*, 160 F.3d at 1037.

Petitioner also claims that counsel should have objected to Sample's identification of Petitioner as the assailant. He argues that the tainted photo lineup, as well as inconsistences between Sample's description of his attacker and Petitioner's appearance should have made Sample's identification inadmissible. However, he provides no legal authority holding that an identification is inadmissible under such a situation. Additionally, the state habeas court identified this issue as a challenge to Sample's credibility. *Id.*, at 132. It found:

> 31. The reliability of the victim's identification of the applicant at trial was a fact issue for the jury regarding the reliability of the witness.

> 32. There was no ground for "objecting" to the victim's identification of the applicant at trial.

*Id.* Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. Furthermore, the testimony about which Petitioner complains was elicited by trial counsel in an attempt to show the identification was tainted based on an impermissibly suggestive lineup. Petitioner has failed to show what more counsel could have done to challenge Sample's testimony. Counsel thoroughly cross-examined Sample and had an expert testify who identified flaws in Sample's photo identification of Petitioner. Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S.

at 689, 104 S. Ct. at 2066. Petitioner has not shown deficient performance. He has also failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068. Likewise, he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25.

<u>Failure to Challenge Coercive Advice Given to Barrett By His Appointed Attorney</u>

Petitioner next argues that trial counsel was ineffective for failing to challenge the coercive advice given to Barrett by his trial counsel, Micah Belden, which caused Barrett to testify against Petitioner. Specifically, he states that he found a person who was told by Barrett what was said at the meeting between Belden and Barrett, who described the advice given to Barrett by Beldon as coercive.

The state habeas court found that trial counsel "was not privy, nor is [Petitioner] to any conversations between Barrett and Barrett's attorney, Micah Beldon." *Dotson*, Appl. No. 71,310-03, at 122. It further stated, "Neither trial court nor trial counsel was aware of coercion by Barrett's counsel." *Id*. Moreover, Petitioner has provided no evidence of this conversation by another inmate. He fails to point to any evidence in the record showing that Belden threatened Barrett. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Petitioner has not shown deficient performance, nor has he shown that there is a reasonable probability that, but for

14

counsel's alleged unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

<u>Failure to Challenge Barrett's Testimony</u>

Petitioner next asserts that counsel was ineffective for failing to challenge Barrett's testimony on the grounds that he was incompetent to testify or that he was intoxicated at the time of the offense. Specifically, Petitioner argues that counsel should have known that Barrett had a low I.Q. and signs of schizophrenia had counsel reviewed records of Barrett's trial. In his affidavit, counsel explained that "Barrett had previously been examined for competency and been found to be competent." *Dotson*, Appl. No. 71,310-03, at 115. "Testimony during Barrett's judicial confession at his plea hearing indicated that he was incompetent." *Id.*, at 118. The state habeas court found:

> 55. Although Sean Barrett had a history of mental illness and possibly mild retardation, he was able to take the oath and answer questions by both the State and the defense intelligently.
>
> 56. Mr. Rubarts knew that Barrett had been examined for competency and had been found to be competent.
>
> . . .
>
> 27. Sean Barrett was competent to testify.
>
> 28. [Petitioner] has failed to prove by a preponderance of the evidence that trial counsel erred in objecting to Sean Barrett's testimony on the grounds of competency or that the outcome of the trial would have been different had he done so.

*Dotson*, Appl. No. 71,310-03, at 125, 131. Petitioner has pointed to no evidence in the record supporting his conclusory allegation that Barrett was not competent to testify at Petitioner's trial. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *Woods*, 870 F.2d

at 288; *Schlang*, 691 F.2d at 799. Furthermore, in analyzing whether counsel is ineffective for failing to file motions, a determination of ineffectiveness "depends on whether a motion or an objection would have been granted or sustained had it been made." *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). Petitioner has failed to show that such a motion or objection would have been granted or sustained. *Id*.

Petitioner also complains that counsel was ineffective for failing to question Barrett more thoroughly on his use of embalming fluid as an intoxicant during the robbery. The state habeas court found that:

> 29.　Testimony at trial established that Barrett may have been under the influence of drugs; however, there was nothing to indicate that this [a]ffected Barrett's testimony and trial counsel had no grounds to object.

> 30.　[Petitioner] has failed to prove by a preponderance of the evidence that trial counsel erred in not objecting to Sean Barrett's testimony due to Barrett's intoxication at the time of the crime or that the outcome of the trial would have been different had he done so.

*Dotson*, Appl. No. 71,310-03, at 132. Moreover, the record reflects that trial counsel thoroughly cross-examined Barrett. Although Barrett's testimony was often vague and uncertain, counsel was able to get Barrett to admit that he was no longer taking prescribed psychotropic medications at the time of the trial. While Barrett stated several times that he did not remember the robbery, counsel was able to get Barrett to admit that he was intoxicated on "wet" (formaldehyde-laced cigarettes) on the night of the robbery. Barrett admitted that he was "high" during his interrogation. Petitioner has not shown deficient performance. He also failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d

at 947. State court findings supported by the record are owed deference by a federal district court. *Pondexter*, 346 F.3d at 149-152. Petitioner has failed to prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068. He has also failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03; *Childress*, 103 F.3d at 1224-25.

Failure to Adequately Investigate Case

Petitioner asserts that counsel was ineffective for failing to adequately investigate his case. He is correct in his assertion that counsel has a duty to conduct a reasonable amount of pretrial investigation. *See Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985); *Lockhart v. McCotter*, 782 F.2d 1275 (5th Cir. 1986). The duty includes seeking out and interviewing potential witnesses. *Id.* at 1282; *Williams v. Beto*, 354 F.2d 698 (5th Cir. 1965). To succeed on the claim, however, Petitioner must show that, had counsel investigated the claim, he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on his behalf. *Alexander v. McCotter*, 775 F.2d 595, 602′ (5th Cir. 1985); *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. den.,* 469 U.S. 1041 (1984). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799.

Petitioner has presented no evidence that his trial counsel failed to sufficiently investigate his case or prepare him for trial. Furthermore, the record contradicts Petitioner's claims. Counsel

stated that he had thoroughly discussed the case with Petitioner, including the material provided by the State in discovery. Although Petitioner stated that his fiance'e could serve as an alibi witness, counsel interviewed her on numerous occasions where she repeatedly maintained that she was not with Petitioner at the time of the robbery. *Dotson*, Appl. No. 71,310-03, at 116. The state habeas court found counsel to be credible. It found that Petitioner "failed to prove by a preponderance of the evidence that trial counsel did not investigate this case properly" and that Petitioner "has failed to prove by a preponderance of the evidence that trial counsel failed to obtain an alibi witness." *Id*. at 128.

Petitioner also claims that counsel should have discovered and introduced various mitigating evidence, including evidence that Petitioner was actually innocent of an earlier conviction and various character evidence. However, he has failed to substantiate that this evidence as actually available. He also has presented no evidence as to how any uncalled witnesses would have testified. *Alexander*, 775 F.2d at 602; *Murray*, 736 F.2d at 282. He has failed to state with specificity what any investigation of witnesses would have revealed or how it would have altered the outcome of the case. *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989).

Petitioner argues that counsel was deficient for failing to offer adequate advice. Specifically, he claims that counsel failed to meet with him before the trial and failed to explain all of his rights, including the right to "suppression motions, to object, to challenge all evidence" and "that a defendant has the ultimate authority on decisions regarding their case." In his affidavit, counsel states that he discussed trial strategy and all possible defenses with Petitioner. He states that he spent 87 hours meeting with Petitioner and investigating the case prior to trial. The state habeas court found that counsel "spent time discussing the case with the applicant both in person and in writing."

*Dotson*, Appl. No. 71,310-03, at 121. It found that he discussed the State's evidence, Petitioner's "rights, options and the plea offer from the State," the trial, the order of the trial, and trial strategy. *Id.*. Petitioner has failed to show deficient performance or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

Finally, Petitioner argues that counsel should have elicited testimony that the complainant was "an alcoholic, a racist, had a criminal history . . . and countless other things which factor in defending his client." Petitioner claims that counsel had information that Samples was prejudiced against blacks.

No evidence in the record points to complainant being an alcoholic or having a criminal history. Barrett and Sample's granddaughter both testified that was prejudiced to some degree. Barrett said that Samples and his wife "don't believe in their granddaughter dating out of their race" and that they "don't like black people." However, Petitioner has not shown how his defense would have been aided had counsel belabored this point. Petitioner has failed to show how attacking Samples, an eighty-year-old man who had been violently assaulted, as a racist would benefit his defense. Counsel, in his affidavit, said that he made the strategic decision not to belabor Sample's possible racism "because he did not see how it would be relevant to [the] defense." *Dotson*, Appl. No. 71,310-03, at 117. The state habeas court accepted this strategic decision because two black men "had already confessed to their part in the attack on [Samples]." *Dotson*, Appl. No. 71,310-03, at 123. It also found that Petitioner failed to show that counsel "erred in not pursuing the race card in this case or that the outcome of the trial would have been different had he done so." *Dotson*, Appl. No. 71,310-03, at 129.

Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2066. He has also failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. State court findings supported by the record are owed deference by a federal district court. *Pondexter*, 346 F.3d at 149-152. Petitioner has also failed to prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

Failure to Move for Mistrial Following Court's Warning to Barrett

Petitioner argues that counsel was ineffective because he did not move for mistrial after the trial court warned Barrett that he potentially faced contempt charges for refusing to answering questions. He claims the trial court's overstatement of the potential punishment for contempt coerced him into testifying. A determination of ineffectiveness "depends on whether a motion or an objection would have been granted or sustained had it been made." *Oakley*, 827 F.2d at 1025.

As an initial matter, the Court notes that Petitioner presents no evidence that the motion would have been granted. *Id.* It is well-settled that counsel is not required to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). This Court will grant federal habeas corpus relief only when the error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause. *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir. 1983). Petitioner failed to allege facts demonstrating that the failure to file the motion rendered the trial as a whole fundamentally unfair. *Bailey v. Procunier,* 744 F.2d 1166, 169 (5th Cir. 1984). He has failed to demonstrate prejudice as required in *Strickland*. Thus, Petitioner has failed to demonstrate that his

attorney's conduct fell below the standards of reasonable professional assistance or that he was

prejudiced. As to this claim, the state habeas court found:

> 23. Trial counsel did not know of any coercion of Barrett by the trial judge.
>
> 24. The applicant has failed to identify what "coercion" he is talking about.
>
> 25. Barrett was reluctant to answer questions.
>
> 26. The trial court informed Barrett that Barrett's case had already been disposed of and he no longer had any claim to a fifth amendment privilege.
>
> 27. Barrett was required to testify against the applicant as part of his plea agreement.
>
> 28. Neither the trial court nor trial counsel was aware of coercion by Barrett's counsel.
>
> 29. Trial counsel was not privy, nor is the applicant, to any conversations between Barrett and Barrett's attorney, Micah Beldon.

*Dotson*, Appl. No. 71,310-03, at 122. The record shows that, after Barrett refused to answer

questions, the court warned Barrett that he was no longer entitled to the privilege of not testifying.

The court then warned him that he could be held in contempt for each question that he did not

answer, and that these additional sentences could be added to his sentence. Nowhere in the record

does it show that the trial judge coerced Barrett into answering questions by threatening one year

sentence for each question he did not answer. The record reveals that the trial court never described

the punishment range for contempt. In sum, Petitioner has not shown that any error occurred;

accordingly, trial counsel had no cause to challenge the trial court's warning to Barrett. Moreover,

any purported errors were harmless because the court appointed Barrett an attorney to explain the

proceeding to him. Barrett met with his attorney outside the presence of the trial court.

Petitioner has failed to show deficient performance or that a motion for mistrial would have been granted. Merely asserting that he was prejudiced is not sufficient to satisfy the prejudice prong of *Strickland*. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Petitioner failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

<u>Failure to Move to Suppress Various Evidence</u>

Petitioner also claims that counsel was ineffective for failing to move to suppress several pieces of evidence. First, he argues that the photographic lineup, in which Sample identified Petitioner as his assailant, should have been suppressed. He contends that the lineup was impermissibly suggestive because Petitioner looked dissimilar to the other men in the lineup– he was the only person shirtless, the only man repeated in two successive lineups, and his photo was positioned in the center of the lineup card.

Trial counsel, in his affidavit, explained that his trial strategy depended upon the lineup. He wanted to show that a State's eventual decision to pin a robbery on Petitioner stemmed from a tainted lineup. Counsel obtained an expert who testified that the lineup was too suggestive and even got the officer who used the lineup to say that it was suggestive. Rubarts stated that he believed that this was the only evidence mitigating the victim's affirmative in-court identification of Petitioner as the attacker. The state habeas court found that "Rubarts used the fact that the victim in the case was shown a suggestive photo lineup as part of his trial strategy." *Dotson*, Appl. No. 71,310-03, at 122. It found that counsel was able to get the officer to admit that the lineup was suggestive, "thus opening up the defensive theory that the victim's identification then and during the trial was tainted

and discrediting the victim's testimony." *Id.*, at 123. The state habeas court noted that counsel's expert witness "bolster[ed] that theory." *Id.* It concluded that Petitioner "has failed to prove by a preponderance of the evidence that trial counsel erred in failing to object to the identification testimony by the victim in this case, that the absence of any objection was trial strategy or that the results of the trial would have been any different had such objection been made." *Id.*, at 132.

Petitioner's counsel mitigated the in-court identification of Petitioner by Sample by raising the question of the suggestive lineup in court. His performance were not deficient, nor has Petitioner shown that the outcome of the trial would have been different had counsel performed differently. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover, he has failed to show that such a motion would have been granted. *Oakley*, 827 F.2d at 1025. Likewise, he has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03; *Childress*, 103 F.3d at 1224-25.

Failure to Move to Dismiss Based on Alleged Illegal Arrest

Next, Petitioner claims that counsel was ineffective for failing to move to dismiss his case because Petitioner was subjected to an illegal arrest. Specifically, he states that because the police did not "knock and announce and were not given consent by anyone to enter Plaintiff's abode," that his arrest was illegal. Counsel stated that arresting officers had a warrant for Petitioner's arrest, and the state habeas court found that Petitioner "failed to set out how his arrest was unlawful." *Dotson*, Appl. No. 71,310-03, at 123. Because officers had an arrest warrant, counsel cannot be found to be

deficient for failing to move to dismiss based on an illegal arrest. The state habeas court's finding

is supported by the record. Petitioner has failed to rebut the presumption of correctness owed to the

trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d

at 947. State court findings supported by the record are owed deference by a federal district court.

*Pondexter*, 346 F.3d at 149-152. He has failed to show that such a motion would have been granted.

*Oakley*, 827 F.2d at 1025. Petitioner has also failed to prove that there is a reasonable probability

that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been

different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

Failure to File Other Various Motions

Petitioner claims that counsel was ineffective for failing to file a motion for continuance. It

appears that he believes that his case went too fast for trial counsel to properly investigate his case.

However , Petitioner has wholly failed to identify any specific theory as to how he was harmed by

trial counsel's decision to go to trial without a continuance. He has also failed to show that, had such

a motion been made, it would have been granted. *Oakley*, 827 F.2d at 1025. The state habeas court

found:

> 21.    The applicant has failed to prove by a preponderance of the evidence
> that trial counsel erred in not requesting a continuance or not being
> prepared for trial. The applicant has failed to prove by a
> preponderance of the evidence that the results of the trial would have
> been different had a continuance been requested.

*Dotson*, Appl. No. 71,310-03, at 130. Moreover, counsel stated that he was prepared for trial;

accordingly, there was no need to file a motion for continuance. Counsel cannot be held to be

ineffective for failing to argue frivolous claims. *Koch*, 907 F.2d at 527. Petitioner has failed to rebut

the state court's findings and he has failed to show that there is a reasonable probability that, but for

counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

Petitioner also complains that counsel did not effectively question the jury members as to why they sentenced him to twenty-one years' confinement. However, he has failed to show any evidence that the jury's sentence was improper in any way – it was within the available range of punishment. Moreover, the state habeas court found that neither attorney "has the authority to interrogate the jurors regarding their verdict." *Dotson*, Appl. No. 71,310-03, at 129. Petitioner has failed to rebut the state court's findings, nor has he shown that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

Petitioner's next complaint concerns counsel's failure to move to dismiss the case for selective prosecution. He contends that Grayson County, where he was prosecuted, treats black and white defendants differently. The state habeas court considered this claim and found that Petitioner's "anecdotal recitations do not prove bias in general and certainly do not show that the applicant was prosecuted for his race, rather than for the fact that he robbed and injured an elderly man." *Dotson*, Appl. No. 71,310-03, at 131. Petitioner has failed to show that such a motion would have been granted. *Oakley*, 827 F.2d at 1025. He has also failed to rebut the state court's findings; likewise, he has failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

Petitioner also argues that counsel should have moved to dismiss the case against him based on accomplices' confessions, illegally-obtained evidence, selective prosecution, and the

impermissibly suggestive lineup. However, as discussed above, each of these contentions have been found to be without merit. Accordingly, counsel had no ground on which to base a motion to dismiss. Thus, any argument counsel would have advanced in this vein would have been frivolous. Counsel cannot be held to be ineffective for failing to argue frivolous claims. *Koch*, 907 F.2d at 527. Furthermore Petitioner has failed to show that such a motion would have been granted, had it been made. *Oakley*, 827 F.2d at 1025.

Petitioner complains that counsel should have filed motions challenging Barrett's involuntary confession, illegally-obtained evidence from an unlawful arrest, "doctored" police reports, selective prosecution, and improper information used by jury during sentencing. However, each of these claims have been addressed above and have been found to be without merit. Furthermore, the state habeas court found that counsel "only filed necessary motions." *Dotson*, Appl. No. 71,310-03, at 123. Petitioner has presented no evidence that counsel ignored a potentially meritorious claim. Furthermore he has failed to show that any such motions would have been granted. *Oakley*, 827 F.2d at 1025. He has failed to rebut the state court's findings; likewise, he has failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

<u>Free Appellate Record</u>

Finally, Petitioner contends that he has been denied the right to a free appellate record. He argues that he has requested a free record numerous times, but these requests have been ignored. However, the state habeas court found that Petitioner "received a free record on direct appeal but was denied a second free record for 11.07 habeas corpus purposes." *Dotson*, Appl. No. 71,310-03, at 126. The state court also found that "[a]n applicant is not entitled - either as a matter of equal

protection, or of due process - to a free transcription of prior proceedings for use in pursuing post-conviction habeas corpus relief." *Id*. Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable in a § 2254 proceeding. *Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001). This issue is without merit.

## Conclusion

Four of Petitioner's claims are procedurally defaulted. Accordingly, they are procedurally barred from federal habeas review. In each of his ineffective assistance of counsel claims, Petitioner has shown neither deficient performance nor prejudice. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068. Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. Further, he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. Accordingly, his petition should be denied.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully

recommended that this Court, nonetheless, address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed.2d 542 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

It is respectfully recommended that reasonable jurists could not debate the denial of the Petitioner's § 2254 petition on procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 134, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that

the Court find that the Petitioner is not entitled to a certificate of appealability as to his claims.

Recommendation

It is therefore recommended that the petition be denied and dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 24th day of August, 2012.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE